Aaron J. Tolson, Esq.
TOLSON & WAYMENT, PLLC
2677 E. 17th Street, Suite 300
Ammon, Idaho, 83406
Email: ajt@aaronjtolsonlaw.com
Telephone: 208-228-5221
Fax: 208-228-5200
I.S.B. #6558

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: | )<br>) Case No. 19-40358<br>) |
| JUSTIN CORDE YOUNG<br>CATHY JO YOUNG, | )<br>) Chapter 11<br>) |
| Debtors in Possession. | )<br>) |

---

## DISCLOSURE STATEMENT

---

On April 17, 2019, Justin Corde Young and Cathy Jo Young, the Debtors, filed their voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Idaho. Pursuant to Section 1125 of the Code, the Debtors have obtained an order of the Court approving this Disclosure Statement for submission to the holders of claims against them.

NOTICE TO CREDITORS OF JUSTIN & CATHY YOUNG

This is a simple case in that Debtors are trying to rebuild their lives after their small business failure, and there are many parties who have claimed an interest from time to time. If you believe you hold a claim against this individual Debtors you should read this document and apply it carefully as your rights are being affected in the Plan.

INTRODUCTION

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTORS' PROPOSED PLAN OF REORGANIZATION. PLEASE READ THIS DOCUMENT WITH CARE.

)

1 - DISCLOSURE STATEMENT

The Debtors are providing this Disclosure Statement to all of his known creditors pursuant to Section 1125 of the Bankruptcy Code in order to permit such creditors to make an informed judgment in exercising their right to vote on the Plan of Reorganization. Section 1125 of the Bankruptcy Code requires that this Disclosure Statement be submitted to holders of claims against, and interests in, the Debtors, and that this Disclosure Statement contains sufficient information about the Debtors to enable creditors and other interested parties to make an informed decision regarding the Plan of Reorganization. The Disclosure Statement is required to be approved by the Court. The Debtors have complied with the requirements of Section 1125 of the Bankruptcy Code and the Disclosure Statement has been approved by the Court as containing adequate information.

THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

This Disclosure Statement is being furnished to all known creditors and claimants to inform them about the Plan and their rights with respect thereto. The only representations that are authorized by the Debtors concerning his finances and business operations, the value of Debtors' assets, his reorganization prospects, or other matters are the representations contained in this Disclosure Statement. The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent Certified Public Account. For that reason, the Debtors are not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy; however, great effort has been made to ensure that all such information is fairly represented.

In determining the acceptance of the Plan, votes will only be counted if submitted by the claimant whose claim is duly scheduled by the Debtors as undisputed, non-contingent, and liquidated, or who, prior to the hearing on confirmation has filed with the court a proof of claim which has not been disallowed or suspended prior to the computation of the vote on the plan. A class that is unimpaired is deemed to have accepted the plan if solicitation of acceptance is not required under Il USC 1126(f).

The ballot received from you does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should check Debtors' schedules, which are on file in the office of the Clerk of the United States Bankruptcy Court, U.S. Courthouse, Pocatello, Idaho. Due to the business of the Clerk of the Bankruptcy Court, it is believed that this information will not be given by telephone.

Pursuant to Bankruptcy Code Il USC 1129(b), the plan may be confirmed even if it is not accepted by one or all of the impaired classes, provided the Bankruptcy Court does not discriminate unfairly and the plan is fair and equitable to such class or classes.

)

Accompanying this Disclosure Statement are copies of the following documents:

2 - DISCLOSURE STATEMENT

APPENDIX A: The Court's Order Approving Disclosure Statement pursuant to 11 USC §1125, and affixing the time for the filing of acceptances or rejections of the Plan of Reorganization and for a hearing on confirmation of the Plan of Reorganization.

APPENDIX B: The Plan of Reorganization.

APPENDIX C: The ballot form for acceptance or rejection of the Plan of Reorganization.

APPENDIX D: Debtors' list of secured and unsecured claims, including any disputed claims.

APPENDIX E: Debtors' Profit & Loss from 2017&2018; Debtors' Three Year Est. Budget.   (See Tax Returns)

APPENDIX F: Annual tax returns.

APPENDIX G: Monthly Operating Reports.

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in this Plan of Reorganization and the Disclosure Statement shall have the following meanings:

ADMINISTRATIVE CLAIM: A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtors, and all allowances approved by the Court in accordance with the Bankruptcy Code. This includes any amounts due to the United States Trustee.

ALLOWED CLAIM: "Allowed Claim" shall mean a Claim: in respect of which a proof of Claim has been filed with the Court on or prior to the Bar Date: or which is scheduled in the Debtors' schedules of assets and liabilities and statement of financial affairs filed with the Court pursuant to §521 of the Bankruptcy Code and which has not been listed (or is no longer listed on the Confirmation Date, if previously so listed) as disputed, contingent or unliquidated; or in respect of which a proof of Claim has been filed with the Court pursuant to 5502(h) or 5502(i) of the Bankruptcy Code; and in any case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule or an order of the Court, or as to which, if objections have been interposed, the Claim has been allowed by order of the Court.

BANKRUPTCY CODE: "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U. S. C. 5101 et seq., and any amendments thereof.

CLAIMS: "Claim" shall mean any right to payment or right to an equitable remedy against Debtors for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

CLASS: "Class" shall mean any class into which Claims or Interests are classified pursuant to Article II of the Plan.

CONFIRMATION DATE: The first business day occurring on or after the (14th) day after the Order of Confirmation is entered by the Court provided, however, that if a stay of the order confirming the Plan is in effect on such first business day, then the Confirmation Date shall be the first business day thereafter on which (i) no stay of the order confirming the Plan is in effect and (ii) the order confirming the Plan has not been vacated.

CONTESTED CLAIM: "Contested Claim" shall mean any Claim which is listed on the schedules, filed by the Debtors as contingent, unliquidated or disputed or is, or becomes, the subject of an objection filed with the Court in accordance with the provisions of the Bankruptcy Code and which remains unresolved.

COURT: "Court" shall mean the United States Bankruptcy Court for the District of Idaho, presiding over the cases or, if necessary the United States District Court for said district having original jurisdiction over bankruptcy cases and the judges thereof.

DISPOSABLE INCOME: "Disposable Income" shall mean the current income Debtors receives, less amounts reasonably necessary to be excluded for Debtors' maintenance and less the payment for expenditures necessary for the continuation, presentation and operation of Debtors' business.

DISPUTED CLAIM: The "Disputed Claim" shall mean a claim either scheduled or filed as a claim, which the Debtors allege that they are not obligated to pay.

EFFECTIVE DATE: The effective date of the Plan shall be the Confirmation Date as that term is defined above.

PLAN TERM: The Plan Term shall mean the time period defined in Article VI of the Plan.

PERSON: "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organizations, or a government or any agency or political subdivision thereof.

REVENUE CODE: "Revenue Code" shall mean the Internal Revenue Code of 1954, as amended, 26 U.S.C. 1 et seq.

4 - DISCLOSURE STATEMENT

## GENERAL HISTORY OF THE DEBTORS

The Debtors, Justin & Cathy Young, have undergone financial difficulties resulting from their purchase of a small meat-packing business after working in the insurance industry for the greater part of their professional lives. They both desire to disengage themselves from the meat-packing business and transition back to the insurance industry, where they enjoy good reputations.

Events Leading up to Bankruptcy: The Debtors filed his Voluntary Petition for relief under the Bankruptcy Code on April 17, 2019. A Meeting of Creditors pursuant to 11 U.S.C. 341(a) was held. Although no formal request "for cause" has been filed for the non-formation of a creditors committee, to date the United States Trustee has declined to form a creditors committee, due to a lack of demonstrated interest by creditors. At the time of filing of this Disclosure Statement, no Notice of Non-Appointment of Unsecured Creditors Committee has been filed by the U.S. Trustee's office with the Bankruptcy Court.

## MAJOR ASSET DISPOSITIONS

No major assets have been voluntarily disposed of by Debtors, except in the ordinary course of the Debtors' business or as authorized by the Court.

## LEASEHOLD INTERESTS/EXECUTORY CONTRACTS

The Debtors have the interests as listed in the accompanying plan.

## PENDING LEGAL PROCEEDINGS
State Court and Federal Court Actions (Including Bankruptcy Proceedings):

## STATEMENT

| Caption | Nature of Case | Location |
|---------|----------------|----------|
|         |                |          |

Claims that may be Contested: Some claims may later be contested which may increase the pro rata distribution to unsecured creditors. Many of these potential claim objections are addressed under the terms of the Plan and need only be addressed should creditors disagree with the Plan. For example, the 506 valuation of collateral objections can be determined as a part of the confirmation process without the necessity of incurring exorbitant legal fees and costs, and otherwise stipulated to in the existing plan treatment stipulation(s), as noted in the Plan. The Plan does not prevent other interested parties from asserting claim objections on their own behalf. Claims that may be contested include, by way of illustration and not limitation, the following:

The Debtors reserve all rights to determine in his business judgment whether a claim objection is a prudent course of action, particularly in light of the administrative priority of

5 - DISCLOSURE STATEMENT

attorney fees. The Debtors reserves all rights to contest any additional claims not listed above and to amend their schedules as the Debtors deems advisable.

## PREFERENCES, FRAUDULENT CONVEYANCES, AND LIEN AVOIDANCE

Debtors may avoid liens of any improper secured creditor. There are no preferences or fraudulent conveyances that Debtors are aware of.

## BASIS OF VALUATION

The basis of the valuation of property contained in the liquidation analysis, or best interest of creditors test, was obtained primarily from the opinion of the Debtors.

IT SHOULD BE BORNE IN MIND THAT THIS ANALYSIS IS ONLY THE BEST ESTIMATE OF THE DEBTORS AND THAT ENTIRETY OF THE Debtors' ASSETS WOULD BE LIQUIDATED AND THIS SORT OF ACTIVITY WILL REDUCE THE LIQUIDATION VALUE OF THE ESTATE.

## LIQUIDATION ANALYSIS ( "Best Interests of Creditors Test" )

Notwithstanding acceptance of the Plan by creditors, in order to confirm the Plan the Court must independently determine that the Plan is in the best interests of all classes of creditors and stockholders. The "best interest" test requires that the Court find that the Plan provides to each member of each impaired class of claims and interest a recovery.

## STATEMENT REGARDING BEST INTEREST

To calculate what members of each impaired class of unsecured claims or interest would receive if the Debtors were liquidated, the Court must first determine the dollar amount that would be generated from the disposition or liquidation of the assets of the Debtors in excess of the amount necessary to pay allowed secured claims, plus the cash held by the Debtors, and plus recoveries on actions against third parties. The proceeds of this liquidation will then be reduced by the costs of the liquidation. Such a liquidation would probably take place in a Chapter 7 proceeding and such a proceeding would likely include the fees of a trustee as well as those of counsel and other professionals that might be retained by such trustee, selling expenses (including costs of advertising and auctioneer's fees or brokerage commissions), unpaid expenses incurred by the Debtors during their reorganization proceedings under Chapter 11, and claims arising by rejection by the trustee of obligations incurred by the Debtors during the pendency of the Chapter 11 case.

The value of the distributions after liquidation, deduction of costs of liquidation, and in keeping with the analysis described above would then be compared by the Court with the present value being offered to each of the classes of unsecured claims and interests under the Plan. The Debtors also believes that secured and unsecured claims in a liquidation would be significantly greater than under the contemplated plan.

The Debtors also believes that liquidation of the Debtors's estate would be a time consuming matter and might involve litigation between a Chapter 7 trustee and the various claimants to assets of the estate. It would not be unusual that no distribution to unsecured creditors in a Chapter 7 liquidation proceeding would be forthcoming for one or more years.

THE DEBTORS FIRMLY BELIEVES THAT PLAN IS IN THE BEST INTERESTS OF EACH CLASS OF CREDITORS AND THAT CREDITORS WILL RECEIVE A LARGER AND QUICKER DISTRIBUTION UNDER THIS PLAN OF REORGANIZATION THAN THEY WOULD IF THE DEBTORS' ESTATE WERE LIQUIDATED.

The following pages set forth assets, liabilities and estimated expenses Debtors are using to calculate his liquidation analysis.

| REAL PROPERTY ASSETS | | | | |
|---|---|---|---|---|
| Description | FMV | Encumbrances | Exemptions | Available |
| Debtors' Residence | 340,000.00 | Wells Fargo | 100,000.00 | 0.00 |
| PERSONAL PROPERTY ASSETS | | | | |
| Household Items | 9,345.00 | | 9,345.00 | 0.00 |
| Cars | 21,300.00 | Westmark | 0.00 | 0.00 |
| Business Interests | | | | |
| Bank Accounts* | | | | |

*Account balance as of the date of filing

LIABILITIES
INDEBTEDNESS AMOUNT OF DEBT

| | |
|---|---|
| ASSERTED SECURED CLAIMS | $10,149.47 |
| TOTAL SECURED CLAIMS: | $10,149.47 |
| PRIORITY CREDITORS : | $20,078.83 |
| ADMINISTRATIVE CLAIMS (est.) | $30,000.00 |
| TOTAL PRIORITY CLAIMS: | $50,078.83 |
| GEN. UNS. CLAIMS: | $130,305.92 |
| TOTAL GEN. UNS. CLAIMS: | $130,305.92 |
| TOTAL CLAIMS: | $130,305.92 |
| NET DIFFERENCE: | $0.00 |

7 - DISCLOSURE STATEMENT

This Disclosure Statement shows that General Unsecured Creditors would not be paid in full, if at all, in the event of a Chapter 7 liquidation. The "Net Difference" represents the estimated value available to other claims of that Chapter 7 estate and to the Debtors-in-possession. The total amount of unsecured claims listed in Appendix "D" is $130,305.92. Additionally, please note that the "Net Difference" does not quantify the costs of liquidation of the estate by a Chapter 7 Trustee.

It is the Debtors' considered opinion unsecured creditors would most likely receive a distribution that would be less than 1% in a chapter 7 liquidation, and the Debtors' Plan provides for significantly more. The Plan provides over the five (5) year term for a distribution of a projected $27,000.00 to general unsecured creditors, including priority, representing approximately a 9% distribution of the Total Gen. Uns. Claims noted above. To the extent undersecured creditors file timely, amended proofs of claim under applicable state laws allowing for deficiency claims, if applicable, this percentage would be reduced accordingly, To the extent any unsecured claims are disallowed, this percentage would be increased accordingly.

The books and records of the Debtors are largely in the possession of Debtors.

This amount is the total amount of general unsecured claims without taking into account the anticipated claim objections.

The Debtors' Plan is simple. The Plan provides for a set payment to all classes after the Plan is confirmed as listed in the plan. Missed payments if any, will extend the Plan term, by the same amount. The Plan also affords the Debtors the right to prepay as his circumstances may allow.

Unsecured creditors also have the right, under the Plan, to request annual tax returns from the Debtors and their counsel, if they submit a written request annually. See Plan, Paragraph IV.3.B at p. 8.

## CONFIRMATION OF THE PLAN

Voting Procedure: All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating and signing the "Ballot for Accepting or Rejecting Plan of Reorganization" attached to this Disclosure Statement as Appendix C.
THE BALLOT MUST BE SERVED ON THE PLAN BY DEBTORS' ATTORNEY BY MAILING SUCH BALLOT TO TOLSON & WAYMENT PLLC, 2677 E. 17th #300, AMMON, ID 83406. IN ORDER TO BE COUNTED ALL BALLOTS MUST BE RECEIVED BY DEBTORS' COUNSEL PRIOR TO 5:00 O'CLOCK P.M. ON THE DATE SPECIFIED IN THE ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT.

Persons Entitled to Vote on Plan: Only the votes of classes of creditors whose claims or interests are impaired by the Plan of Reorganization will be counted in connection with confirmation of the Plan of Reorganization. Generally, and subject to the specific provisions of 1124 of the Bankruptcy Code, this includes any creditor who, under the Plan, will receive less than payment in full in cash of the allowed amount of their respective claims on the effective date of the Plan. It appears to the Debtors that all claims are impaired. See Article III and Article

IV of the proposed Plan. In determining acceptance of the Plan, votes will be counted only if submitted by a creditor whose claim is scheduled by the Debtors as undisputed, non-contingent and liquidated, or who, prior to the hearing on confirmation, has filed with the Bankruptcy Court a Proof of Claim which has not been disallowed, disqualified or suspended prior to computation of the vote on the Plan. The ballot which accompanies this Disclosure Statement does not constitute a Proof of Claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtors' schedules which are on file with, and may be inspected at, the U.S. Bankruptcy Court, 801 E. Sherman Street, Pocatello, ID 83201.

Acceptances May Not be Necessary to Confirm Plan: Under §1126 of the Bankruptcy Code an impaired class is deemed to have accepted the Plan if (1) at least 2/3 in amount and (2) more than 1/2 in number of the allowed claims or interests of class members who have voted on the Plan have voted to accept it. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Bankruptcy Court must also determine that under the Plan such class members will receive property of value, as of the effective date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan. Even if all classes of claims or interests accept the Plan, the Court may refuse to confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and there are other provisions therein which may affect confirmation exclusive of the votes of creditors.

Confirmation of Plan Without Acceptances: The Court may confirm a Plan even though less than all of the classes of claims or interests accepts the Plan.

The circumstances under which the Court may confirm a Plan over the objection of a class of claims or interests are set forth in of the Bankruptcy Code. This section provides that the Court may confirm a Plan notwithstanding its rejection by one or more impaired classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class which does not accept the Plan. With respect to classes of secured creditors, the fair and equitable test requires that a secured creditor (1) retain its lien and receive cash payments having a present value equal to its allowed secured claim, and (2) receive the proceeds of the sale of its collateral, or (3) realize the indubitable equivalent of its claim to the extent validly secured.

With respect to a class of unsecured claims, the fair and equitable test requires that if each creditor in such class does not receive property having a present value equal to the amount of such creditors allowed claim, no junior class can receive or retain any property. The Debtors of the Plan will rely on the features of 1129(b) in the event there is a rejection of the Plan by a class of claims or interests. The invocation of the provision of 1129(b) is a legal matter required to be heard by the court at the confirmation hearing or at a hearing set by the court.

In this case, the Debtors' Plan provides that upon confirmation the Debtors' prepetition assets will be vested in the Debtors, subject to the repayment terms in the Plan. If the Debtors do not obtain the necessary votes, the Plan may not satisfy 1129(b), also known as the Absolute Priority Rule, and the Debtors may not be able to confirm this Plan. In other words, without the necessary votes the individual Debtors may not cram down a plan that permits the Debtors to retain prepetition property that is not excluded from the bankruptcy estate under 11 U.S.C. 541. If unsecured creditors do not accept the Plan, the parties may be left with either liquidation or an amended plan as the alternatives. It is uncertain what an amended plan would provide. It is the

9 - DISCLOSURE STATEMENT

Debtors' considered opinion that the current Plan provides more than a liquidation for unsecured creditors and represents the best alternative for all parties.

Consequences of Confirming the Plan: Confirmation of the Plan will not discharge the Debtors from the debts provided in the plan; confirmation makes the Plan binding upon the Debtors' creditors and other parties in interest regardless of whether they have accepted or rejected the Plan. Confirmation of the Plan will, generally, provide for the distribution of value to the creditors as set forth in the Plan. The Plan will not be final by liquidation because the one Creditor will be satisfied.

Hearing on Confirmation of the Plan: The Bankruptcy court has set a hearing date to determine whether the Plan has or will be accepted and whether the other requirements for confirmation of the Plan have been satisfied. A time for hearing for confirmation of the Plan has been established in Appendix "A" hereto and each creditor and shareholder should make note of that Notice of Hearing and determine whether or not they want to attend. Attendance is not mandatory to establish a claim.

Also, as also set forth in Appendix "A", all ballots must be timely filed with the Bankruptcy Court as outlined in Appendix "A."

Retention of Jurisdiction: If the Plan is confirmed by the Bankruptcy Court, it will retain jurisdiction, as more specifically set out in the Plan, to adjudicate the allowance of claims, the value of secured interests, the disposition of executory contracts or unexpired leases, the avoidance of liens or transfers, litigation concerning claims and property of the estate, rule on modifications of the Plan if any, and to issue such orders and judgments as may be necessary to implement the Plan and resolve disputes concerning the Plan.

## BANKRUPTCY SCHEDULES

This Disclosure Statement is meant to disclose all of the assets and liabilities of the Debtors, To the extent it contradicts the bankruptcy schedules on file with the Bankruptcy Court the disclosures contained in this Disclosure Statement and Appendices control.

DATED this ___1___ day of ___Aug___, 2019.

_____
Justin Young

_____
Cathy Young

10 - DISCLOSURE STATEMENT